IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JAMES WAN | Criminal Action No. <br><br> 1:22-CR-00188-LMM-CMS |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE AND SUPPRESS**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Bret R. Hobson, Assistant United States Attorney for the Northern District of Georgia, files this response to Defendant's Motion in Limine to Exclude and Suppress (Doc. 37).

In his motion, Defendant James Wan seeks to suppress statements he made to FBI agents during a consensual encounter. Wan argues that the statements are "fruit of the poisonous tree" because agents would not have spoken to him had they not received a tip about his illegal conduct. But agents are permitted to question suspects about tips. And because no unlawful police conduct tainted Wan's confession, this Court should deny Wan's motion.[1]

---

[1] Incidentally, Wan repeatedly describes the tip as "uncorroborated" and "anonymous" (*see* Doc. 37 at 1-3), but as explained below, the tip was neither. Moreover, even if the tip had been uncorroborated and/or anonymous, it would not change the analysis herein.

## Background

On May 11, 2022, the FBI received a tip from a confidential source who was known to the FBI and had previously provided accurate information. The source told the FBI that someone with username "jwan6725241" had solicited murder-for-hire services via a dark web[2] marketplace (hereinafter, the "DWM"). According to the tip, the user had placed an "Order" on the DWM to have a specific person, hereinafter referred to as "the Victim," killed in exchange for payment in bitcoins and had provided the Victim's address in Duluth, Georgia. The tip further indicated that the user had already made two Bitcoin payments worth approximately $16,000 total to the DWM on April 18 and 21, 2022.

Although agents believed the DWM was a scam with no actual hitmen, they remained concerned the user would try to have the Victim killed another way, so they traced the two identified Bitcoin payments and discovered they originated from a Coinbase[3] digital wallet. Agents then requested and received information from Coinbase about the wallet. The information from Coinbase established that

---

[2] The "dark web" is part of the Internet that is only accessible by means of special software, allowing users and website operators to remain anonymous or untraceable. Among other sites available on the dark web are a number of criminal marketplaces that allow participants to buy and sell illegal items, such as drugs, firearms, and other hazardous materials with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply "web"). For example, a famous dark web marketplace, Silk Road, operated similarly to legitimate commercial websites such as Amazon and eBay, but offered illicit goods and services. Law enforcement shut down Silk Road in 2013.

[3] Coinbase is a virtual currency exchange on which users can buy, sell, send, receive, and exchange virtual currencies, including Bitcoin.

the wallet belonged to Wan and showed he had recently made four Bitcoin payments, including the original two identified as going to the DWM:

- April 18, 2022 - $7,960.85
- April 21, 2022 - $7,998.66
- April 29, 2022 - $7,712.79
- May 10, 2022 - $1,235.66

Agents also conducted open-source searches on Wan and the Victim and discovered that they shared a young daughter, appeared to be in a romantic relationship, and lived together at the address listed in the Order.

On May 14, 2022, agents learned the Victim and Wan were at Northside Hospital Gwinnett in Lawrenceville, Georgia, where Wan was receiving treatment for broken ankles. Agents went to the hospital and interviewed the Victim. She confirmed her home address and explained that she had been dating Wan for the past nine years and that they had a daughter together. She further explained that she and Wan had been arguing for the past few months and that their relationship was not on good terms. She also told agents that she had recently reported Wan to his work for drinking in his office with coworkers. After learning about the possible threat to her, the Victim remembered some odd things Wan had recently done, including taking a video of her car and zooming in on the license plate. She also remarked that Wan had a private, locked browser on his phone called an "Onion browser" that could only be accessed

with facial recognition.[4] She also told agents that Wan had previously threatened to shoot her during an argument. After the interview, law enforcement took the Victim to a safe location.

Agents then interviewed Wan at the hospital and informed him that he was not in custody or under arrest. During the interview, Wan confirmed that he and the Victim had been arguing for the past six to eight months and that it had made him very angry when the Victim reported him to his work for drinking in the office because it threatened his career and livelihood. Agents told Wan that they heard Wan posted something seeking to hurt the Victim, and they asked him whether he had ever been on the dark web and had a Coinbase account. Wan denied having ever accessed the dark web but acknowledged he had a Coinbase account. Agents then told Wan that one transaction traced back to his Coinbase account, and Wan suggested that maybe he had been hacked. Agents explained that they were going to go back and look at who accessed the DWM site and urged Wan to tell the truth, saying at one point, "if it was a mistake, it was a mistake." Shortly thereafter, Wan admitted that he "made the mistake."

At that point, although Wan was still not in custody, agents read him his *Miranda* rights, and he agreed to speak with the agents further without a lawyer present. When asked how much he paid to the DWM hitman site, Wan explained that he made four Bitcoin payments worth approximately $7,500,

---

[4] "Onion Browser" is a Tor-powered web browser application for the iOS operating system that can be installed on Apple iPhones and used to access the dark web. Onion Browser is available for download from the Apple App Store.

$7,500, $7,500, and $5,000.[5]  The first disappeared from his "escrow" account on the site, and he believed someone had scammed him out of that payment.  The second two payments were intended to reach the $15,000 required to hire a hitman, and the last payment was to top off the account after the value of Bitcoin fell.  Wan then explained that he had checked the DWM hitman site daily after placing the Order.  Wan consented to agents searching his phone, which he did not have with him at the hospital.  Wan also suggested he could cancel the Order and withdraw all his funds from the escrow account if agents brought him his phone.  Agents left Wan at the hospital without arresting him.

On May 17, 2022, agents returned to the hospital with Wan's iPhone.  While agents watched and recorded him, Wan voluntarily accessed the DWM hitman site from his iPhone.  After opening the Onion Browser application on his iPhone via facial recognition and logging into the DWM with username "jwan6725241" and his password, WAN showed agents the Order, which identified the Victim by name (first and last), provided her home address, described her car and license plate, and stated, "Can take wallet phone and car.  Shoot and go.  Or take car."  The "Status" of the order showed as, "Payment submitted and secured in escrow."  After accessing his Coinbase account to obtain his Bitcoin wallet address, Wan requested a refund of the funds in his escrow account on the DWM and cancelled the Order.  Agents again left Wan at the hospital without arresting him.

---

[5] Wan later estimated that the last payment was actually for approximately $1,500.

On May 19, 2022, agents again returned to the hospital with Wan's iPhone. While agents again watched and recorded him, Wan voluntarily accessed the DWM to confirm that the Order had been canceled. No active Order appeared on Wan's account, but the bitcoins still appeared to be in his escrow account, so he again requested a refund. Wan also showed agents two questions he had posted on the site's forum tab. The first, dated May 2, 2022, stated, "I have submitted an order and curious how quickly it should be carried out? Is there a way I can find out any progress? If there is anyone in my location?" The second, dated May 5, 2022, stated, "I've contacted admin. I need this taken care of fast. Who can help. Duluth, ga. USA." Wan also showed agents two messages he had sent to the site administrator. The first, dated May 11, 2022 (which was the day after he made his final Bitcoin payment to the site), identified the Victim by name (first and last) on the subject line and stated, "This is all I have. I only wanted to spend $15000." The second, dated May 12, 2022, again identified the Victim by name (first and last) on the subject line and stated, "Thanks. How soon do you think it can be done. This weekend? We have a court date Tuesday 17. It would be good if it could be done before the 17." Agents again left Wan at the hospital without arresting him.

The following day, May 20, 2022, agents arrested Wan pursuant to federal criminal complaint and arrest warrant signed by U.S. Magistrate Judge Linda T. Walker. And on May 24, 2022, a grand jury indicted Wan for knowingly using a facility of interstate commerce with the intent that the murder of the Victim be

6

committed in consideration for payment, in violation of 18 U.S.C. § 1958(a). (Doc. 10.)

Wan now asks this Court to suppress the statements he made to the FBI agents, arguing that the statements are "fruit of the poisonous tree" because "[t]here was insufficient Probable Cause to support interviewing the Defendant for the above referenced Federal charge since it was based on an uncorroborated Anonymous Tip." (Doc. 37 at 2.) But Wan's argument fails because agents may interview suspects without probable cause and no other unlawful police action tainted Wan's confession.

## Argument

"Under the so-called 'fruit of the poisonous tree' doctrine, admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed." *United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013); *see Utah v. Strieff*, 579 U.S. 232, 237 (2016) (explaining that courts exclude "both the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree'" (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984))). Although there are several exceptions to this rule whereby evidence may be admissible despite "the primary illegality," that is despite the initial "taint of unlawful police action," *see Timmann*, 741 F.3d at 1182-83, this Court need not even consider whether those exceptions apply here because agents engaged in no unlawful conduct.

7

Wan argues that any "evidence gathered as a result of the anonymous tip . . . is tainted and must be suppressed" (Doc. 37 at 2), seemingly suggesting that simply speaking with Wan based on the tip was unlawful. As noted above, the tip was not actually anonymous, but even if it had been, agents were still permitted to ask Wan about it because no rule prohibits law enforcement from addressing questions to a citizen during a "consensual encounter." *See United States v. Jordan*, 635 F.3d 1181, 1185-86 (11th Cir. 2011) (explaining that consensual encounters do not implicate the Fourth Amendment, while brief seizures and investigative detentions require only reasonable suspicion, and arrests require probable cause).

Here, agents properly confronted Wan during a consensual encounter only with information they had obtained lawfully: a tip they received from a private citizen, who was known to the FBI and had previously provided accurate information, and corroborating information they legally obtained from their trace of the Bitcoin payments, Coinbase, open-source searches, and the Victim. In the absence of any "primary illegality" that could have tainted Wan's confession, the fruit of the poisonous tree doctrine is simply inapplicable. Accordingly, there are no grounds to suppress or exclude Wan's statements to the FBI agents.

## Conclusion

For the foregoing reasons, this Court should deny Wan's motion to exclude and suppress.

        Respectfully submitted,

        RYAN K. BUCHANAN
          *United States Attorney*

        /s/BRET R. HOBSON
          *Assistant United States Attorney*
        Georgia Bar No. 882520
        Bret.Hobson@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Joseph M. Todd
>104 South Main Street
>Jonesboro, GA 30236
>770-477-7878
>joseph@josephmtodd.com
>*Attorney for Defendant James Wan*

June 6, 2023

>/s/ BRET R. HOBSON
>BRET R. HOBSON
>*Assistant United States Attorney*