IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES WAN | Criminal Action No.<br><br>1:22-CR-00188-LMM-CMS |

## SENTENCING MEMO

The United States of America, by Ryan K. Buchanan, United States Attorney, and Bret R. Hobson, Assistant United States Attorney for the Northern District of Georgia, files this sentencing memo. As explained below, the Government recommends that the Court sentence Defendant James Wan to 87 months' imprisonment, which is at the low end of the advisory guideline range.

### Background

On May 11, 2022, the FBI received a tip that someone with username "jwan6725241" had solicited murder-for-hire services via a dark web[1] marketplace (hereinafter, the "DWM"). According to the tip, the user had placed an "Order" on the DWM to have a specific person, hereinafter referred to as "the Victim," killed in exchange for payment in Bitcoin and had provided the Victim's address in Duluth, Georgia. The tip further indicated that the user had already

---

[1] The "dark web" is part of the Internet that is only accessible by means of special software, allowing users and website operators to remain anonymous or untraceable.

made two Bitcoin payments worth approximately $16,000 total to the DWM on April 18 and 21, 2022.

Although agents believed the DWM was a scam with no actual hitmen, they remained concerned the user would try to have the Victim killed another way, so they traced the two identified Bitcoin payments and discovered they originated from a Coinbase[2] digital wallet. Agents then requested and received information from Coinbase about the wallet. The information from Coinbase established that the wallet belonged to Wan and showed he had recently made four Bitcoin payments, including the original two identified as going to the DWM:

· April 18, 2022 - $7,960.85
· April 21, 2022 - $7,998.66
· April 29, 2022 - $7,712.79
· May 10, 2022 - $1,235.66

Agents also conducted open-source searches on Wan and the Victim and discovered that they shared a young daughter, appeared to be in a romantic relationship, and lived together at the address listed in the Order.

On May 14, 2022, agents learned the Victim and Wan were at Northside Hospital Gwinnett in Lawrenceville, Georgia, where Wan was receiving treatment for broken ankles. Agents went to the hospital and interviewed the Victim. She confirmed her home address and explained that she had been dating Wan for the past nine years and that they had a daughter together. She further

---

[2] Coinbase is a virtual currency exchange on which users can buy, sell, send, receive, and exchange virtual currencies, including Bitcoin.

explained that she and Wan had been arguing for the past few months and that their relationship was not on good terms. She also told agents that she had recently reported Wan to his work for drinking in his office with coworkers. After learning about the possible threat to her, the Victim remembered some odd things Wan had recently done, including taking a video of her car and zooming in on the license plate. She also remarked that Wan had a private, locked browser on his phone called an "Onion browser" that could only be accessed with facial recognition.[3] She also told agents that Wan had previously threatened to shoot her during an argument. After the interview, law enforcement took the Victim to a safe location.

Agents then interviewed Wan at the hospital. He confirmed that he and the Victim had been arguing for the past six to eight months and that it had made him very angry when the Victim reported him to his work for drinking in the office because it threatened his career and livelihood. Agents told Wan that they heard Wan posted something seeking to hurt the Victim, and they asked him whether he had ever been on the dark web and had a Coinbase account. Wan denied having ever accessed the dark web but acknowledged he had a Coinbase account. Agents then told Wan that one transaction traced back to his Coinbase account, and Wan suggested that maybe he had been hacked. Agents explained that they were going to go back and look at who accessed the DWM site and

---

[3] "Onion Browser" is a Tor-powered web browser application for the iOS operating system that can be installed on Apple iPhones and used to access the dark web. Onion Browser is available for download from the Apple App Store.

3

urged Wan to tell the truth, saying at one point, "if it was a mistake, it was a mistake." Shortly thereafter, Wan admitted that he "made the mistake."

When asked how much he paid to the DWM hitman site, Wan explained that he made four Bitcoin payments worth approximately $7,500, $7,500, $7,500, and $5,000.[4] The first disappeared from his "escrow" account on the site, and he believed someone had scammed him out of that payment. The second two payments were intended to reach the $15,000 required to hire a hitman, and the last payment was to top off the account after the value of Bitcoin fell. Wan then explained that he had checked the DWM hitman site daily for nearly a month after placing the Order. Wan consented to agents searching his phone, which he did not have with him at the hospital. Wan also suggested he could cancel the Order and withdraw all his funds from the escrow account if agents brought him his phone.

On May 17, 2022, agents returned to the hospital with Wan's iPhone. While agents watched and recorded him, Wan voluntarily accessed the DWM hitman site from his iPhone. After opening the Onion Browser application on his iPhone via facial recognition and logging into the DWM with username "jwan6725241" and his password, WAN showed agents the Order, which identified the Victim by name (first and last), provided her home address, described her car and license plate, and stated, "Can take wallet phone and car. Shoot and go. Or take car." The "Status" of the order showed as, "Payment submitted and secured in

---

[4] Wan later estimated that the last payment was actually for approximately $1,500.

escrow." After accessing his Coinbase account to obtain his Bitcoin wallet address, Wan requested a refund of the funds in his escrow account on the DWM and cancelled the Order.

On May 19, 2022, agents again returned to the hospital with Wan's iPhone. While agents again watched and recorded him, Wan voluntarily accessed the DWM to confirm that the Order had been canceled. No active Order appeared on Wan's account, but the Bitcoin still appeared to be in his escrow account, so he again requested a refund. Wan also showed agents two questions he had posted on the site's forum tab. The first, dated May 2, 2022, stated, "I have submitted an order and curious how quickly it should be carried out? Is there a way I can find out any progress? If there is anyone in my location?" The second, dated May 5, 2022, stated, "I've contacted admin. I need this taken care of fast. Who can help. Duluth, ga. USA." Wan also showed agents two messages he had sent to the site administrator. The first, dated May 11, 2022 (which was the day after he made his final Bitcoin payment to the site), identified the Victim by name (first and last) on the subject line and stated, "This is all I have. I only wanted to spend $15000." The second, dated May 12, 2022, again identified the Victim by name (first and last) on the subject line and stated, "Thanks. How soon do you think it can be done. This weekend? We have a court date Tuesday 17. It would be good if it could be done before the 17."

The following day, May 20, 2022, agents arrested Wan pursuant to federal criminal complaint and arrest warrant. On May 24, 2022, a grand jury indicted Wan for knowingly using a facility of interstate commerce with the intent that

the murder of the Victim be committed in consideration for payment, in violation of 18 U.S.C. § 1958(a).  (Doc. 10.)

On October 17, 2023, Wan pled guilty to the sole count of the indictment pursuant to a signed plea agreement in which the government promised to recommend a low-end sentence and the parties agreed not to request any sentence outside of the guideline range.  (Docs. 49, 49-1 ¶¶ 14, 24.)  This Court is scheduled to sentence Wan on January 18, 2024. (Doc. 50.)

In anticipation of sentencing, the U.S. Probation Office issued a presentence investigation report (PSR) that calculated Wan's guideline range as follows:

· Base offense level pursuant to § 2E1.4 = 32

· Downward adjustment for acceptance of responsibility under § 3E1.1 = -3

· Total offense level = 29

· Criminal History Category = I

(PSR ¶¶ 21, 27, 29, 33.)  At 29/I, Wan's custody guideline range is 87 to 108 months' imprisonment.  (*Id.* at Sentencing Options.)

Wan's sole objection to these calculations is an argument that the base offense level should be 31 because the statutory maximum for his offense of conviction is 120 months.  (*See id.* at 21.)  For the reasons explained below, this Court should reject Wan's objection and sentence him to 87 months' imprisonment.

## Discussion

Wan's objection has no merit, because the statutory maximum does not affect a defendant's base offense level under § 2E1.4.  Furthermore, an 87-month sentence is appropriate.

**1. The PSR correctly calculates Wan's base offense level and guideline range.**

Section 1B1.1(a) of the guidelines explains how to calculate the applicable guideline range by following eight steps in order:

1. Determine the applicable Chapter Two offense guideline section;

2. Determine the base offense level and apply any appropriate adjustments found in Chapter Two;

3. Apply any adjustments found in Parts A, B, and C of Chapter Three for victim, role, and/or obstruction of justice;

4. If there are multiple counts of conviction, repeat steps 1 through 3 for each count and apply the grouping rules in Part D of Chapter Three;

5. Apply any appropriate adjustment in Part E of Chapter Three for acceptance of responsibility;

6. Determine the defendant's criminal history category as specified in Part A of Chapter Four and apply any appropriate adjustments found in Part B of Chapter Four;

7. Determine the applicable guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above; and

8. "For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution."

*See* U.S.S.G. §§ 1B1.1(a)(1)-(8).

Only in the last part of the eighth and final step, when applying Part G of Chapter Five, does the statutory maximum come into play. Specifically, for a single count of conviction (as we have here with Wan), § 5G1.1(c) explains that the Court must not impose a sentence below any applicable mandatory minimum or above any statutory maximum. The guidelines' commentary then provides the following example: "If the applicable guideline range is 51–63 months and the maximum sentence authorized by statute for the offense of conviction is 60 months, the guideline range is restricted to 51–60 months under subsection (c)." § 5G1.1 cmt.

In Wan's case, the PSR properly followed the guidelines' prescribed steps, determining:

1. Section 2E1.4 is the applicable offense guideline section;

2. The base offense level is 32 and no Chapter Two adjustments apply;

3. No adjustments apply for victim, role, and/or obstruction of justice;

4. No grouping adjustments apply;

5. A three-level reduction for acceptance of responsibility applies;

6. Wan's criminal history category is I;

7. A total offense level of 29 and a criminal history category of I results in a guideline range of 87 to 108 months' imprisonment; and

8. Because the top of the guideline range is below 120 months, which is the statutory maximum term of imprisonment for Wan's offense of conviction, no adjustment is necessary under § 5G1.1.

8

Wan is simply wrong when he suggests that the PSR should have reduced his base offense level from 32 to 31 in step 2 because his statutory maximum is 120 months.

**2.  A sentence of 87 months' imprisonment is appropriate.**

At sentencing, the Court must first correctly calculate the applicable guideline range, and then it may weigh the § 3553(a) factors in arriving at an appropriate sentence.  Section 3553(a) requires district courts to consider the following factors in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to provide general deterrence; (C) to provide specific deterrence; and (D) to provide the defendant with appropriate rehabilitation options; (3) the kinds of sentences available; (4) the advisory guideline range; (5) the guidelines' policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a)(1)–(7).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

Here, Wan committed an extremely serious offense.  His efforts to hire a hitman to kill his romantic partner could have resulted not only in her death but possibly in the death or injury of others, including his own daughter who was often in the same house and car with the target.  Furthermore, this was not a momentary lapse of judgment: after placing the order, Wan made multiple

9

payments over the course of three weeks that totaled approximately $25,000, checked the status of the order daily for nearly a month, messaged the site administrator seeking updates and urging that the murder occur before an upcoming court date, and only canceled the order after the FBI confronted him. Notwithstanding Wan's lack of a significant criminal history, no sentence below the low end of the applicable guideline range would promote respect for the law, provide just punishment for the offense, deter such reprehensible criminal conduct, and adequately protect the victim and the public from further crime by Wan.

## Conclusion

For the foregoing reasons, this Court should sentence Wan to 87 months' imprisonment, which is at the low end of the applicable guideline range.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*


/s/BRET R. HOBSON
*Assistant United States Attorney*
Georgia Bar No. 882520
Bret.Hobson@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Joseph M. Todd
>104 South Main Street
>Jonesboro, GA 30236
>770-477-7878
>joseph@josephmtodd.com
>
>Curt Blackburn Thompson, II
>Thompson & Associates Law Firm, P.C.
>PO Box 957014
>Duluth, GA 30095
>404-643-2649
>curtbthompson@bellsouth.net
>
>*Attorneys for Defendant James Wan*

January 12, 2024

>/s/ BRET R. HOBSON
>BRET R. HOBSON
>*Assistant United States Attorney*